**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



**Dated: February 27 2007**

Mary Ann Whipple
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| **In Re:** Dane Clark | ) | Case No. 06-31965 |
| Laura Schambers | ) | |
| | ) | Chapter 7 |
| **Debtor(s)** | ) | |
| | ) | **JUDGE MARY ANN WHIPPLE** |
| | ) | |

## MEMORANDUM OF DECISION REGARDING MOTION TO REDEEM

This matter is before the Court on Debtors' motion to redeem a motor vehicle under 11 U.S.C. § 722 [Doc #8] from the lien of Drive Financial ("Drive") and Drive's objection to the motion [Doc. #15].[1] The court must determine the value of Debtors' motor vehicle under § 506(a)(2) of the Bankruptcy Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), 11 U.S.C. § 506(a), which became effective in cases filed on or after October 17, 2005, as this one was. In their motion, Debtors assert that the redemption value of their 2004

---

[1] The court has jurisdiction over Debtors' chapter 7 case pursuant to 28 U.S.C. §§ 1334(a) and 157(a). The United States District Court for the Northern District of Ohio has referred all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 to the bankruptcy judges in this district. General Order 84-1. The motion to redeem is a core proceeding that this court may hear and determine. 28 U.S.C. § 157(b)(1) and (b)(2)(K) and (O).

Toyota Camry is $11,995.00. In its response, Drive asserts that the redemption value of Debtors' car is $15,412.50. The parties stipulated that the basis for decision of the motion would be the documents submitted by the parties as exhibits in support of the motion and objection, respectively. Based on the stipulated record, and for the reasons stated below, the court finds that the amount of Drive's allowed secured claim and the redemption value of the car is $14,310.

Under § 722 of the Bankruptcy Code, as amended by BAPCPA, 11 U.S.C. § 722, an individual debtor may redeem consumer goods from a lien securing a dischargeable consumer debt, if the property is exempt under § 522 or has been abandoned under § 554, by paying the lienholder in full at the time of redemption the amount of the allowed secured claim that is secured by the lien. The only change to the text of § 722 under BAPCPA was addition of the language requiring the redemption amount to be paid in full at the time of redemption. Addition of this language to § 722 did not change the law in the Sixth Circuit, as that court had long ago decided that redemption value had to paid in a lump sum. *In re Bell*, 700 F.2d 1053, 1058 (6th Cir. 1983). Debtors in fact properly propose to pay the redemption amount in a borrowed lump sum, and Drive does not dispute that Debtors' car is subject to redemption from its lien. Rather, as is generally the case, the dispute is over the amount to be paid by Debtors to Drive to effect the redemption.

The "allowed secured claim" that Debtors must pay to redeem this car from Drive's lien is defined in § 506(a)(1) as follows:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use on a plan affecting such creditor's interest.

The pre-BAPCPA version of § 506(a) did not contain a specific valuation standard, leaving it to the courts to determine valuation standards appropriate to specific provisions of and issues under the

2

Bankruptcy Code. The Sixth Circuit had not ruled before BAPCPA on the proper valuation standards for a secured creditor's allowed claim for purposes of redemption under § 722. In the absence of binding Sixth Circuit authority, courts in this circuit generally held that a creditor's allowed secured claim under pre-BAPCPA § 506(a) for purposes of redemption under § 722 was measured by the liquidation value of the collateral, that is, the amount that the creditor would expect to recover upon repossession and sale by auction or other wholesale means. *Triad Financial Corp. v. Weathington (In re Weathington)*, 254 B.R. 895, 899 (B.A.P. 6th Cir. 2000); *see also In re Donley*, 217 B.R. 1004,1007 (Bankr. S.D. Ohio 1998).

Under BAPCPA, Congress added a statutory valuation standard in § 506(a)(2) that applies to redemption of collateral from liens under § 722. Section 506(a)(2) reads as follows:

> If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing. With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time the value is determined.

The Supreme Court set the standard for valuing property retained by debtors in *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 963, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997). Observing that § 506(a) of the Bankruptcy Code contained no statutory valuation standard, *Rash* determined that, under § 506(a), the value of property retained when the debtor decides to "cram-down" a creditor's claim in a chapter 13 case is the "cost the debtor would incur to obtain a like asset for the same proposed use." In other words, *Rash* required a debtor to value the creditor's collateral in a chapter 13 at replacement value. In new § 506(a)(2) Congress appears to be codifying *Rash* for application to a broader set of legal circumstances.[2] Section 506(a)(2) thus changes the standard

---

[2] The Supreme Court's rationale for applying replacement value in the context of chapter 13 cram-downs was that it would more accurately reflect the loss of value of the collateral

generally applied pre-BAPCPA by courts in the Sixth Circuit for valuing collateral and determining a creditor's allowed secured claim for purposes of redemption under § 722. The court must therefore determine in this particular case "the price a retail merchant would charge for property of that kind [2004 Toyota Camry] considering the age and condition of the property at the time value is determined."

No consensus has emerged in the so far relatively sparse case law interpreting § 506(a)(2) as to how retail value should be determined, and the results reached really depend, not surprisingly, on the overall record a court is presented with in a particular case. *See In re Eddins*, 355 B.R. 849 (Bankr. W.D. Okla. 2006)(Chapter 13 cramdown of non-910 vehicle; N.A.D.A. Guide retail value is starting point); *In re Brown*, C/A No. 06-00197-JW, 2006 Bankr. LEXIS 713, 2006 WL 3692609 (Bankr. D.S.C., April 24, 2006)(court rejects debtor's market reports evidence in favor of creditor's appraiser's report) ; *In re Feagans*, No. 06-20049, 2006 Bankr. LEXIS 2872 (Bankr. D. Kan., October 18, 2006)(rejects creditor's N.A.D.A. Guide valuation in favor of creditor's proffered opinion testimony from car salesperson as to what she would sell vehicle for on lot)*; In re Mayland*, Bankr. No. 06-10283, 2006 Bankr. LEXIS 967 at *5, 2006 WL 1476927 at *2 (Bankr. M.D.N.C., May 26, 2006) (starting point for determining replacement value under § 506(a)(2) is 90% of the retail value of the vehicle listed by the NADA Guide, explaining that adjustments still need to be

---

to the creditor from deterioration caused by retention and continued use of the property by the debtor. *Id.*, 520 U.S. at 962-63. But where the secured claim is being paid in a lump sum, as must now occur by statute under amended § 722, instead of over time as in a chapter 13 plan, and the creditor is not therefore subject to the risk of further collateral deterioration, this rationale does not seem to work. Moreover, in *Rash,* 520 U.S. at 965, n.6, and in case law since *Rash*, *see, e.g., In re Bryan*, 318 B.R. 708, 710 (Bankr. W.D. Mo. 2004)(defines retail value as the price a willing buyer is willing to pay for any car and replacement value as the price a willing buyer is willing to pay for a similar car minus the cost of sale), replacement value was not necessarily equated with retail value, as Congress has now chosen to do for at least some circumstances. Nevertheless, despite this disconnect, the new statutory replacement value standard Congress has established in § 506(a)(2) clearly applies to redemptions under amended § 722.

4

made to the prices printed in the N.A.D.A. Guide, such as for reconditioning costs incurred to put a vehicle into saleable condition).

Debtor presented a document called Vehicle Condition Report prepared by the prospective redemption lender. [Doc. #9]. This document shows that the vehicle in issue is a 2004 model Toyota Camry in fair condition with 50,00 miles on it. It has cruise control, a tilt steering wheel, power windows and seats, an AM/FM radio, CD player and automatic transmission. It does not have a theft deterrent system, anti-lock brakes, leather interior, or a sunroof. The Valuation Report section of the document presented by Debtors states that the "Average Base Value", under a column headed "Retail Value," is $11,995.00. The "Mileage Class" for the car is described as average, with no addition or subtraction, and the third line for "Add-ons/Deducts" is blank. The bottom line for the car under the column marked "Retail Value" is $11,995.00 "[b]ased on Dealer's Ad-Mid West Region-August 2006 Edition."

Drive presented two documents. [Doc. #15]. The first document is the Retail Installment Contract and Security Agreement for the vehicle. This document was signed by Debtors on March 19, 2005, approximately 17 months before they filed for bankruptcy, and shows that the car was purchased from Ft. Wayne Toyota. The purchase price was $20,602.26 ($2,500 down payment and $18,102.26 financed). The second document is a page reprinted from the Central Edition of the "N.A.D.A. Official Used Car Guide Automated Vehicle Valuation" for August 2006. The vehicle is identified thereon as a 2004 Camry-4 Cylinder Sedan 4d LE. The VIN number matches on both Debtors' report and Drive's report. Accessory Equipment, for which adjustments are presented, are "Aluminum/Alloy Wheels, 250; Power Seat[s], 200; and Theft Recovery Sys[tem], 75." The vehicle mileage is described as 0. The MSRP is 19,045, Base Retail is 16,100, Base Trade is 13,675 and Base Loan is 12, 325. The bottom line values on Drive's exhibit are presented as "Retail: 16,625, Trade-in: 14,200; Loan 12,850." Drive argues from these numbers that the redemption value is $15, 412.50

5

as the average of the N.A.D.A. retail value of $16,625 and N.A.D.A. wholesale value of $14,200.00.

Where the codified test is now defined as the price a retail merchant would charge, both sets of valuation documents presented to the court use the language of retail valuation on target with the actual language of the statutory test. But it is virtually impossible from the record to precisely determine which value–$11,995 or $15,412.50–more accurately reflects the true value of the vehicle. Neither value is wholly supported by the evidence or fully persuasive to the court. Each document is summarily presented and raises questions that are not answered on this record.

Debtors' retail value seems unreasonably low; it is $8,607.26 less than Debtors paid for the vehicle just 17 months before they filed for bankruptcy, a 42% decrease in the retail price. No evidence is provided to explain why this type or model of vehicle would have depreciated so rapidly from what Debtors were willing to pay for it recently. Is there a glut of 2004 Camrys on the market? Is there something about the current model that devalues earlier models? Is there a quality issue? It is Debtors' burden to support and enhance the persuasiveness of their own evidence.

On the other hand, in its favor, Debtors' report appears to be based on an actual dealer advertisement, whereas the N.A.D.A. Guide page offered by Drive is a composite of dealer retail values in the Central Region. Given the new statutory language, an actual retail offering is arguably more in line with the new standard than a composite average. As one court has aptly recognized, the actual sales price one retail merchant might charge is not based solely on market guides such as N.A.DA. or Kelley Blue Book: "just because market guides say they reflect 'retail' value does not mean they reflect a realistic retail sales price." *Feagans*, 2006 Bankr. LEXIS 2872 at *11-*12. This is a different situation than a pre-BAPCPA decision predicting a liquidation value but where the vehicle was not actually being sold, the predominant method of disposal was by auction and the prevailing valuation standard necessitated an evidentiary prediction from the best available information as to what similar property was likely to sell for at an auction. Here, the standard is

6
06-31965-maw    Doc 22    FILED 02/27/07    ENTERED 02/28/07 11:55:38    Page 6 of 8

what retail merchants would charge; there is evidence in the record of what a retail merchant in the business of selling cars is apparently actually charging in this general geographic area. Thus, for purposes of establishing retail prices under the BAPCPA valuation standard, actual retail price offerings, over the Internet and otherwise, are at least relevant and of some persuasive value to the court. On the other hand, this statement on Debtors' document lacks persuasive detail from which the court can actually compare the similarity of the two vehicles, Debtors' as compared to the vehicle in the ad from the unidentified mid west region dealer.

In favor of Drive's evidence, the NADA guide has been and continues to be post-BAPCPA an important source and component of valuation evidence for courts and parties. *Eddins*, 355 B.R. at 852. On the other hand, the N.A.D.A. Guide report that Drive submitted in this case states that the vehicle milage is 0. The court has no basis from the record to factor the impact of that apparently incorrect statement into its analysis. It would not seem to mean that no adjustment is necessary for mileage deviations from the average, as there is a separate line for "Mileage Adj." on the report. There is also an unexplained difference in fact as to whether a theft deterrent or recovery system is an accessory on the vehicle, which accounts for a minor $75 difference in value between the two reports. The vehicle condition upon which the N.A.D.A. Guide valuation is based, as between good, fair or poor, for example, is not specified; Debtors have asserted that their vehicle's condition is fair and is the only evidence in the record of same. Moreover, under the new statutory standard and for the same reasons discussed above, the court does not find it appropriate, as Drive's counsel has, to average the retail and wholesale values of a particular vehicle in the absence of some explanation as to how such an approach improves the accuracy of the valuation from the standpoint of the new standard in § 506(a)(2).

The court thus determines based on the stipulated record before it in this case that the replacement value of Debtors' vehicle based on the retail price a retail merchant would charge

7

Debtors to acquire it is $14,310. The court arrived at this amount as the average of Debtors' $11,995 retail value and Drive's $16,625 retail value. The parties might well be tempted to suggest that the court is engaging in the proverbial act of splitting the baby. In this case, however, the midpoint between the two proffered retail values takes into account, in light of the applicable legal standard, both the evidentiary shortcomings and the increase the court believes is appropriate, for the reasons stated, insofar as Debtors' proposed valuation as well as the evidentiary shortcomings and the decrease the court believes is appropriate, for the reasons stated, insofar as Drive's proposed valuation. Under § 506(a)(2), the court finds that $14,310 is the replacement value that measures Drive's secured claim and is thus the amount that Debtors must pay Drive in a lump sum to redeem their car from Drive's lien under 11 U.S.C. § 722.

The court will enter a separate order granting Debtors' motion to redeem as provided in this memorandum of decision.